IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TEATHER GAIL DANIELS,

        Plaintiff,

v.                                     CASE NO. 2:09-cv-00584

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

# M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Teather Gail Daniels (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on July 30, 2007, alleging disability as of October 23, 2006, due to seizures and tumor in the chest cavity recently surgically removed, hypertension, possible Crohn's Disease, bad nerves, anxiety and depression.  (Tr. at 14, 168, 172, 189.)  The claims were denied initially and upon reconsideration.  (Tr. at 14.)  On March 10, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 88-89.)  The hearing was held on June 19,

2008, before the Honorable James P. Toschi. (Tr. at 24-53.) By decision dated July 15, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-23.) On April 24, 2009, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-3.) On May 26, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe

2

impairment.   Id. §§ 404.1520(c), 416.920(c).   If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   Id. §§ 404.1520(d), 416.920(d).   If it does, the claimant is found disabled and awarded benefits.   Id.   If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.   Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.   Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).   The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of epilepsy, adjustment disorder with anxiety and depressed mood and obesity. (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 18.) As a result, Claimant cannot return to her past relevant work. (Tr. at 21.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as inspector, router, and hand packer, which exist in significant numbers in the national economy. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

4

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was twenty-eight years old at the time of the administrative hearing. (Tr. at 27.) Claimant graduated from high school and attended school to become a certified nursing assistant ("CNA"). (Tr. at 27, 195.) In the past, she worked as a CNA. (Tr. at 50.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will briefly summarize it below.

Claimant was hospitalized from October 27, 2006, through November 1, 2006, for treatment of an abdominal mass. (Tr. at 249-50.) Claimant underwent a PET scan on November 21, 2006, which was negative. (Tr. at 294.) On December 7, 2006, Claimant underwent left thoracotomy, excision of the mediastinal tumor and frozen section biopsy. (Tr. at 274.) The cyst, found near the distal

esophagus, was benign.  (Tr. at 278.)  Claimant healed well after the surgery.  (Tr. at 305.)

On February 16, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no limitations.  (Tr. at 312-19.)

The record includes treatment notes and other evidence from Joe J. White, Jr., M.D.  On May 23, 2007, Claimant complained of intermittent upper abdominal pain with nausea and vomiting at times and frequent postprandial fecal urgency and diarrhea.  Claimant was in no distress.  The abdomen was soft, obese with normal bowel sounds and no evidence of organomegaly, masses, bruits or distention.  There was minimal upper abdominal tenderness and no peripheral edema.  Dr. White's assessment was probably irritable bowel syndrome.  Dr. White recommended a colonoscopy and other diagnostic tests.  (Tr. at 320.)

The record includes treatment notes from Karen Hultman, D.O. On August 8, 2006, Dr. Hultman wrote that she had last treated Claimant in 2004, for a seizure disorder, that Topomax was prescribed and that she had recently alerted her staff that Claimant had not been under a doctor's care since her last visit with Dr. Hultman.  Also, she had not been on medication for the seizure disorder.  Dr. Hultman offered to conduct an assessment for the West Virginia Department of Health and Human Resources ("DHHR") to determine if she required medication.  (Tr. at 349.)  On August

6

15, 2006, Dr. Hultman examined Claimant upon referral from DHHR after Claimant stopped taking her seizure medication because she could not afford it.  Claimant reported she had not had a seizure in two years.  The neurological examination was normal.  Dr. Hultman's diagnoses included GERD, dysmenorrhea, ovarian cysts, seizure disorder and generalized joint pain. (Tr. at 346-48.)

On July 16, 2007, Dr. Hultman completed a West Virginia Department of Health and Human Resources Medical Review Team (MRT), General Physical Adults.  Claimant complained of chest pain, shortness of breath and abdominal pain.  Claimant had decreased breath sounds, generalized joint pain, depression and anxiety and a seizure disorder, among others.  Dr. Hultman diagnosed hypertension, ovarian cyst, seizure disorder, abdominal pain, chronic, workup ongoing, medistinal mass removed.  She opined that Claimant could not perform full time work.  (Tr. at 339-40.)

On September 24, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to medium work, with an occasional ability to climb, balance and stoop, and a need to avoid concentrated exposure to extreme cold and hazards.  (Tr. at 356-62.)

On November 26, 2007, Misti Jones-Wheeler, M.S. examined Claimant at the request of the State disability determination service.  Ms. Jones-Wheeler diagnosed adjustment disorder with mixed anxiety and depressed mood on Axis I and made no Axis II

7

diagnosis.  (Tr. at 366.)

On November 29, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 368-81.)

On December 20, 2007, Claimant underwent an ultrasound of the right upper quadrant.  There were internal echoes without posterior shadowing within the gallbladder lumen consistent with sludging of bile.  The pancreas was obscured by overlying bowel gas, and the liver parenchyma was heterogeneous.  (Tr. at 385.)  A HIDA study with ejection fraction on December 23, 2007, showed normal gallbladder ejection fraction.  (Tr. at 386.)

On January 3, 2008, Dr. White performed a colonoscopy, the results of which were normal.  Dr. White diagnosed benign anal bleeding and irritable bowel syndrome.  (Tr. at 382-83.)

On January 15, 2008, Dr. Hultman completed a Medical Assessment of Ability to do Work-Related Activities (Physical). She opined that Claimant was limited to light work, that she could stand/walk three hours in an eight-hour workday and sit five hours in an eight-hour workday.  She opined that Claimant should climb and crouch less than occasionally.  She further opined that Claimant had limitations in pushing and pulling.  When asked to identify the medical findings supporting her assessment, Dr. Hultman either did not reply or stated that Claimant had decreased strength in the postural muscles and decreased muscular endurance.

8

(Tr. at 387-90.)

On February 1, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, with an occasional ability to climb ladders, ropes and scaffolds and crawl. (Tr. at 391-98.) The State agency medical source acknowledged Dr. Hultman's opinion, but stated that the "physician's OV notes re physical findings 10-12/07 do not support this statement (ref p 6)." (Tr. at 397.)

On February 1, 2008, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 399-12.)

The record includes additional treatment notes and other evidence from Dr. Hultman and others dated from 2006 through 2008. (Tr. at 413-550.)

At the administrative hearing, the ALJ called two experts, one to testify about Claimant's mental impairments, and the other to testify about Claimant's physical impairments. Dr. Marshall Tessnear testified that Claimant had an adjustment disorder with mixed anxiety and depression arising from her medical problems. He limited Claimant to simple work activities that are low to moderate stress. (Tr. at 40-41.) Dr. Judith Brendemuehl testified that Claimant had a bronchial cyst that was benign with no evidence of residuals, a small hiatal hernia, GERD, obesity and seizure

disorder with no recent seizure.  Dr. Brendemuehl noted it had been
years since Claimant had had a grand mal seizure.  She noted Dr.
Holtman's most recent treatment notes were negative and have
generally been negative with the exception of minor back problems
and recent gynecological problems.  (Tr. at 43-45.)   Dr.
Brendemuehl opined that a residual functional capacity for medium
work was reasonable with additional limitations.  (Tr. at 47.)  Dr.
Brendemuehl opined that Claimant would not have difficulty
completing an eight-hour workday.  (Tr. at 49.)

Claimant submitted evidence to the Appeals Council, all of
which post dates the ALJ's decision by several months or more.
(Tr. at 567-88.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because the ALJ erred in
disregarding the opinion of Claimant's treating physician, Karen
Hultman, D.O.  (Pl.'s Br. at 13-16.)  When limitations opined by
Dr. Hultman were considered by the vocational expert on the
assessment dated January 15, 2008, the vocational expert stated
that Claimant could not perform light or medium jobs.  (Tr. at 52.)
Claimant's counsel then stated that Dr. Hultman had prepared a
revised assessment dated February 10, 2008, that limited sitting
and standing and walking to three hours out of an eight-hour
workday. With those limitations, the vocational expert opined that

Claimant could not work.  (Tr. at 52-53.)

In response, the Commissioner argues that the ALJ properly weighed the evidence from Dr. Hultman, noting that it was not well supported by the medical evidence, including Dr. Hultman's own treatment notes.  In addition, the Commissioner argues that Dr. Hultman's opinion was inconsistent with the other medical evidence of record, including the opinions of Dr. Brendemuehl and Dr. Williams.  (Def.'s Br. at 14-20.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2008).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005).

Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3)-(5) and 416.927(d)(3)-(5) add the factors of supportability (the more evidence, especially medical signs and

laboratory findings, in support of an opinion, the more weight will
be given), consistency (the more consistent an opinion is with the
evidence as a whole, the more weight will be given), and
specialization (more weight given to an opinion by a specialist
about issues in his/her area of specialty). Additionally, the
regulations state that the Commissioner "will always give good
reasons in our notice of determination or decision for the weight
we give your treating source's opinion." §§ 404.1527(d)(2) and
416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.297(d)(1), more weight
generally is given to an examiner than to a non-examiner. Sections
404.1527(d)(2) and 416.927(d)(2) provide that more weight will be
given to treating sources than to examining sources (and, of
course, than to non-examining sources). The Fourth Circuit Court
of Appeals has held that "a non-examining physician's opinion
cannot by itself, serve as substantial evidence supporting a denial
of disability benefits when it is contradicted by all of the other
evidence in the record." Martin v. Secretary of Health, Education
and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener,
376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-
examining physician can be relied upon when it is consistent with
the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir.
1986).

In his decision, the ALJ acknowledged the evidence of record

12

from Dr. Hultman and the physical residual functional capacity
assessment she completed on January 15, 2008.  He noted that

> Dr. Hultman wrote that the medical findings supporting
> her assessment were: decreased muscle endurance and
> decreased postural strength and endurance.  Dr. Hultman
> left blank a question that asked what medical findings
> supported her assessment (Exhibit 12F, p. 4).  Caroline
> Williams, MD, a state agency consultant, completed a
> physical residual functional capacity assessment on
> January 30, 2008.  Dr. Williams reviewed Dr. Hultman's
> assessment.  Dr. Williams opined that Dr. Hultman's
> office notes did not support her residual functional
> capacity assessment (Exhibit 13F).  The [ALJ] has
> evaluated Dr. Hultman's opinion to determine the extent
> to which it is supported by the record as a whole or is
> contradicted by persuasive evidence (20 CFR
> 404.1527(d)(2) and SSR 96-5p).  The [ALJ] find[s] that
> Dr. Hultman's opinion is not well supported by medically
> acceptable clinical and laboratory diagnostic techniques,
> and is "not consistent" with the weight of the medical
> evidence of record.  Therefore, the [ALJ] rejects Dr.
> Hultman's assessment regarding the claimant's residual
> functional capacity as it is not supported by the weight
> of the evidence as a whole (SSR 96-2p).

(Tr. at 20-21.)

> The ALJ explained that

> [i]n sum, the above residual functional capacity
> assessment [as found by the ALJ] is supported by the
> opinion of the impartial medical experts who testified at
> the hearing, Dr. Brendemuehl and Dr. Tessn[e]ar and the
> opinions of the state agency consultants (Exhibits 5F,
> 8F, 10F, 13F and 14F).

(Tr. at 21.)

The court finds that the ALJ adequately and properly weighed
the evidence of record from Dr. Hultman and that his findings are
supported by substantial evidence of record.  The ALJ is correct in
his determination that Dr. Hultman's opinions are not well

supported by her own treatment notes, acceptable clinical and laboratory diagnostic techniques or the remaining evidence of record. Substantial evidence of record indicates that after the mass was removed from Claimant's abdomen, her condition improved. The objective evidence of record, including ultrasounds and the PET scan and other evidence referenced above, were largely normal. Dr. Hultman's own treatment notes do not indicate the presence of significantly limiting impairments or resulting limitations. Furthermore, the remaining evidence of record, from Dr. Brendemuehl, the State agency medical sources and others is not consistent with Dr. Hultman's opinion.

As an aside, the court notes that when the vocational expert considered the limitations opined by Dr. Hultman on the January 18, 2007, assessment he testified that sedentary jobs would remain, although none were identified. (Tr. at 52.) Claimant refers to a revised assessment by Dr. Hultman on February 10, 2008, which limited Claimant's ability to sit for only three hours out of an eight-hour workday and standing and walking also to three hours out of an eight-hour workday. With these limitations, the vocational expert testified that there were no jobs. (Tr. at 52-53.) The court could not locate this revised assessment in the record. In any event, the opinions of Dr. Hultman that Claimant has significant and disabling limitations such that she cannot engage in substantial gainful activity simply are not consistent with Dr.

14

Hultman's own treatment notes, the objective evidence of record and the remaining medical evidence of record.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: June 24, 2010

Mary E. Stanley
United States Magistrate Judge

15